IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Milton L. Youmans,                    )
                                      )
                    Plaintiff,        )          Civil Action No. 2:11-cv-3227-DCN-WWD
                                      )
         v.                           )          **REPORT AND RECOMMENDATION**
                                      )              **OF MAGISTRATE JUDGE**
                                      )
City of North Charleston,             )
                                      )
                    Defendant.        )
_____)

     The Plaintiff, proceeding *pro se*, brought the instant employment action in November of 2011. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

     This matter is before the Court upon Defendant's Motion for Summary Judgment. (Dkt. No. 133.) Plaintiff has responded in opposition to the motion, the time for a reply has not run but it is not necessary to have a reply, and in this posture the matter is ripe for disposition. For the reason which follow, Defendant's motion should be granted.

## BACKGROUND

     Plaintiff was employed by Defendant City of North Charleston for the time period March 24, 2008, until he was terminated on November 2, 2010. No one disputes that he was a member of a protected class - African American.

     Plaintiff was hired by the city as a Code Enforcement Officer. He was supervised by Angela McJunkin, Director of Code Enforcement, and William Taylor, Assistant Director of Code Enforcement. The city used Employee Chronological Records "to provide documentation to support the . . . employee's performance evaluation." See Memorandum in support of Motion, Exh.D. The city has attached several of these chronological records to the summary judgment motion which details Plaintiff's work performance - some good

and some not so good. For example, early on after his hire, Plaintiff reported to work out of uniform, he left work early without notice or without permission, he needed to heed advice given to him by his supervisors and co-workers, while at the same time he presented his court cases well and he kept his vehicle clean. His continued to arrive late for work (August 7 and twice in September for which he was reprimanded). In October 2008 Plaintiff failed to meet his required quotas for field inspections and inspection notices, but he kept his truck and work area clean and neat. Plaintiff fell short of the required field inspections in December 2008, and the chronological record noted that he should "meet all quotas stated in the Standard Operating Guidelines." Memorandum, etc., Exh.M. On January 20, 2009, Plaintiff was given a written reprimand for failing to report for work on time - he was in Atlanta and did not arrive at work until 3:30 p.m. Id. at Exh.N. Plaintiff was given a second written reprimand on January 22, 2009, for not maintaining his city vehicle. Id. at Exh.O. This reprimand noted that the vehicle was overdue for maintenance twice by almost 1000 miles each time, and Plaintiff was warned that further violation of city and departmental policies and procedures would result in "time off without pay." Id. Plaintiff met his quotas for March 2009 but he was cited for a dirty city vehicle. For April, it was noted that Plaintiff should monitor his city radio closely but his vehicle was clean and he met his quotas. For May, Plaintiff was noted as rushing through inspections and court documents, leading to information being illegible and incorrect, he was neglecting a given neighborhood, and he failed to meet his quota for field inspections. Plaintiff failed to meet field inspections quotas for June and July - meaning that he failed to meet quotas for three consecutive months.

As a result of these repeated and documented deficiencies in his work performance, Plaintiff was given a Performance Improvement Plan (PIP) in August 2009 which called his attention to these performance deficiencies - accountability, attendance, quality of work, and professionalism. Id. at Exh.V. Plaintiff was prescribed specific remedies he was

expected to meet and he was warned that the failure to meet these expectations could result in discharge. Plaintiff's work performance improved for August and September but his city vehicle needed to be cleaned. For October, Plaintiff met his quotas but his city vehicle still needed cleaning. For November, Plaintiff failed to meet the required quotas of field inspections and he was cited for failing to follow procedure when requesting time off and when he arrived late for work. For all of the year 2009 Plaintiff was found to be below expectations in quality and quantity of work, dependability and attendance.

Plaintiff's work improved for January and February 2010, but in March he failed to meet quotas. His supervisors noted deficiencies in his work for April but his supervisors noted their own  errors and found that Plaintiff completed the required number of cases. Plaintiff continued to improve for May, June, and July except for violations centering on foreclosure properties. Plaintiff's August work was acceptable except for some administrative problems with court summonses and field inspection reports. Last of all, the city brings to the court's attention an October 2010 incident in which Plaintiff was responsible for supervising several juvenile community service workers. Plaintiff returned only one of five workers to city hall, leaving the others stranded at the work site. Id. at Exh.TT. Following this incident, Plaintiff was terminated.

## ANALYSIS

### A. Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597

3

F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## B. Employment Claims

Plaintiff has alleged a single cause of action for race discrimination under Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . .

42 U.S.C. § 2000e-2(a)(1). To satisfy ordinary principles of proof in discrimination cases, a plaintiff must provide direct evidence of a purpose to discriminate or circumstantial evidence of sufficiently probative force to raise a genuine issue of material fact. Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988); see also Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004)). Because it is often difficult for a plaintiff to provide direct evidence of discriminatory intent, the Supreme Court has created a burden-shifting structure for analyzing such claims. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under McDonnell Douglas, the plaintiff must first establish a prima facie case of discrimination. See Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). This may be done by showing that (1) the plaintiff is a member of a protected class; (2) the plaintiff was otherwise qualified for the position; (3) the plaintiff suffered an adverse employment action; and (4) the action took place under conditions

4

establishing an inference of discrimination. See McDonnell Douglas, 411 U.S. at 802; see also Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).

Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the challenged action. McDonnell Douglas, 411 U.S. at 802; see also O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311-12 (1996). If the employer meets this burden, the plaintiff must then prove that the defendant's proffered reasons "were not its true reasons, but were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507-08 (1993)). "The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256). "The responsibility of proving that 'the protected trait . . . actually motivated the employer's decision' remains with the plaintiff at all times." Spain v. Mecklenburg County Sch. Bd., 54 F. App'x 129, 133 (4th Cir. 2002) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force to reflect a genuine issue of material fact" as to this question. Goldberg, 836 F.2d at 849.

Plaintiff's response to the summary judgment motion makes much of his disagreement with Defendant's decision to fire him. The bulk of his argument is aimed at convincing the court that Defendant created a hostile work environment. See, e.g., Response pp.3 (plaintiff has been subjected to an environment of hostile discriminatory action; subjected plaintiff to an environment of. . .disparate treatment; racial (sic) discriminatory environment) and 9 (this has been the pattern of discrimination that has been taking place for a year). Be that as it may, the court has rejected the notion that Plaintiff has

5

a hostile work environment claim. The court has noted that the hostile work environment claim is procedurally barred because Plaintiff's administrative charge with the Equal Employment Opportunity Commission complains only of the single incident of discrimination in his termination. And because the hostile work environment claim is procedurally barred, Plaintiff's motion to amend was denied as futile. Moreover, the idea of a hostile work environment seems to be an after-thought. Despite a continuous stream of written monthly evaluations Defendant gave to Plaintiff, he did not once complain about a discriminatory work environment, notwithstanding that he had the opportunity to respond, and did respond, to those monthly evaluations.

In Title VII cases, it is now well-accepted that rude treatment by co-workers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's superiors are not actionable. Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006); Bass v. E.I. DuPont de Nemours&Co., 324 F3d 761, 765 (4th Cir. 2003); Hawkins v. PepsiCo. Inc., 203 F3d 274, 276 (4th Cir. 2000). Moreover, the "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" Faragher v. City of Boca Raton, 524 U.S. 775, 778 (1998); Beal v. Abbott Labs., 130 F.3d 614, 620-21 (4th Cir. 1997) ("Title VII simply does not guarantee freedom from insensitive remarks that do not create an objectively abusive work environment."), abrogated on other grounds, as recognized by Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134 (4th Cir. 2007).

In this case, Defendant carefully documented Plaintiff's work progress from shortly after his hire. Unfortunately for Plaintiff, his poor work performance outweighed his satisfactory performance and no jury could find otherwise. This case fits squarely within the Supreme Court's admonition to the effect that if the evidence "is so one-sided that one party

must prevail as a matter of law," the court must enter summary judgment. <u>Anderson</u>, 477 U.S. at 251-52. Defendant's motion should be granted.

## **CONCLUSION**

It is therefore RECOMMENDED, for the foregoing reasons, that Defendant's Motion for Summary Judgment (Dkt. No. 133) be GRANTED.

IT IS SO RECOMMENDED.

August 21, 2014
Charleston, South Carolina

WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).